UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JASON D. PETTY,<br><br>     Plaintiff,<br><br>v.<br><br>SIGNATURE HEALTHCARE SERVICES, LLC d/b/a AURORA-CHICAGO LAKESHORE HOSPITAL, a Michigan limited liability company,<br><br>     Defendant. | Case No. 20-cv-5075<br><br>CLASS ACTION |

**DEFENDANT SIGNATURE HEALTHCARE SERVICES, LLC d/b/a AURORA-CHICAGO LAKESHORE HOSPITAL'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS AND TO COMPEL ARBITRATION**

Defendant Signature Healthcare Services, LLC d/b/a/ Aurora-Chicago Lakeshore Hospital ("Signature"), by its attorneys, submits the following Memorandum of Law in Support of its Motion to Dismiss and to Compel Arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* and Federal Rule of Civil Procedure 12(b)(3).

## I. INTRODUCTION AND FACTS

Plaintiff's class action lawsuit should be dismissed and sent to arbitration because Plaintiff expressly agreed to arbitrate all claims arising from his employment with Signature when he executed a valid and enforceable arbitration agreement ("Arbitration Agreement"), which covers the claims Plaintiff makes in the instant court proceedings. The Arbitration Agreement provides that either party may bring an action in any court of competent jurisdiction to compel arbitration under the Arbitration Agreement. It also contains a class action waiver. Signature respectfully

1

requests this Court enter an order compelling Plaintiff to arbitrate his individual claim against Signature per the terms of the Arbitration Agreement and dismissing the instant lawsuit with prejudice or, in the alternative, staying it pending the outcome of arbitration. The Court also should declare, pursuant to the agreement of the parties, that Plaintiff cannot proceed with a class, collective or representative action in any forum.

### A. Procedural History and Plaintiff's Allegations in his Class Action Complaint

On April 29, 2020, Plaintiff Jason D. Petty ("Plaintiff") filed a Class Action Complaint ("Complaint") in the Circuit Court of Cook County, Illinois, styled *Jason D. Petty v. Signature Healthcare Services, LLC d/b/a Aurora-Chicago Lakeshore Hospital*, Case No. 2020-CH-04012. *See* Class Action Complaint ("Complaint"), attached as Exhibit 1. The Complaint was served on Signature on July 30, 2020. *See* Certificate of Service, attached as Exhibit 2. Signature timely removed the case to this Court under the Class Action Fairness Action ("CAFA"). *See* Dkt. 1.

Plaintiff's Complaint alleges that Signature violated the Illinois Biometric Information Privacy Act, 740 ILCS § 14/1 *et seq.*, and asserts two separate causes of action:

(1) violations of BIPA, 740 ILCS § 14/15(b), for Signature's alleged failure to obtain informed consent before obtaining Plaintiff's purported biometric identifiers or biometric information ("First Cause of Action");

(2) violations of BIPA, 740 ILCS § 14/15(a), for Signature's alleged failure to institute maintain and adhere to a publicly available retention schedule for biometric identifiers or biometric information ("Second Cause of Action");

Compl. at ¶¶ 42-58, Ex. 1. Plaintiff's First and Second Causes of Action are premised on the same underlying operative factual allegations, namely, that "[Signature] was using [a] biometric fingerprint timeclock when [Plaintiff] began his employment with Defendant in November 2019, *Id.* at ¶ 30, "Plaintiff's only knowledge of the fingerprinting timeclock was the required use while

2

clocking in in order to continue his employment with [Signature]" *Id.* at ¶ 31, and Signature did not obtain informed consent from Plaintiff before collecting his biometric information, nor did Signature inform him of its recordkeeping for biometric information. *See Id.* at ¶¶ 32-33.

Based on these and other allegations, Plaintiff asserts claims for reckless, or alternatively, negligent violations of BIPA and seeks declaratory and injunctive relief as well as statutory damages and attorneys' fees and costs. *Id.* at ¶¶ 54, 58; *see also id.* at pp. 15-16, Prayer for Relief, subparts a-g. Plaintiff seeks to represent a class of similarly situated individuals comprising:

> All persons who, while residing in Illinois and employed by Signature Healthcare Services, LLC, had their fingerprints collected, captured, stored, or otherwise used by Signature Healthcare Services, LLC during the relevant period of time.

*id.* at ¶34. BIPA provides for statutory damages in the amount of $5,000 per reckless violation of BIPA, or $1,000 in damages for each negligent violation of the statute. 740 ILCS § 14/20(1)-(2).

> **B.      Plaintiff and Signature's Binding Agreement to Arbitrate Claims Made Against Each Other Arising from Plaintiff's Employment with Signature**

Signature owns and operates fourteen (14) hospitals throughout the country, including Aurora-Chicago Lakeshore Hospital ("Chicago Lakeshore"). Declaration of Patricia McClure-Chessier ("McClure-Chessier Dec.") at ¶ 3, attached as Exhibit 3. Plaintiff was employed by Chicago Lakeshore as a Mental Health Worker in its Nursing department from November 4, 2019 through January 30, 2020. *Id*. at ¶ 7. Plaintiff alleges he used a biometric timeclock when he was employed at Signature for the entirety of his employment. Compl. at ¶¶ 28-30, Ex. 1.

On October 31, 2019, Plaintiff elected to agree to the terms of a mutual arbitration agreement (the "Arbitration Agreement") presented to him by Chicago Lakeshore in conjunction with his employment at Chicago Lakeshore. Arbitration Agreement at p. 5, attached as Exhibit 4; *see also* McClure-Chessier Dec. at ¶8, Ex. 3. The Arbitration Agreement that Plaintiff executed

3

was the standard Agreement presented to all Chicago Lakeshore employees. McClure-Chessier Dec. at ¶ 6, Ex. 3. On its face, the Arbitration Agreement is both voluntary and mutual. Arbitration Agreement at p. 1, p. 5, Ex. 4. As such, Plaintiff had the option to decline or accept the terms of the mutually binding Arbitration Agreement, and accepting the terms of the Arbitration Agreement was <u>not</u> a condition of Plaintiff's employment with Chicago Lakeshore. *See generally* Arbitration Agreement, Ex. 4. Plaintiff chose the option to accept and agree to the terms of the Arbitration Agreement, and executed the agreement accordingly. *Id.* at p. 5.

> Plaintiff and Chicago Lakeshore's Arbitration Agreement provides, in relevant part:

> > [Chicago Lakeshore] and all of its parents, subsidiaries, and related entities or corporations (collectively, the "Company") and [Plaintiff] *voluntarily agree to the resolution by arbitration of all claims, disputes, and/or controversies (collectively "claims"), whether or not arising out of [Plaintiff's] employment or its termination, that Company may have against [Plaintiff] or that [Plaintiff] may have against Company, its subsidiaries or affiliated entities, or against its current or former employees or agents in their capacity.*

*Id.* at p. 1, (emphasis added); *see also* McClure-Chessier Dec. at ¶ 9, Ex. 3. Signature Healthcare is the Defendant in this case and encompassed by the definition of "Company" in the arbitration agreement. McClure-Chessier Dec. at ¶ 9, Ex. 3. The Arbitration Agreement further provides:

> Employee and Company expressly intend and agree that each will also forego pursuing any covered dispute on a class, collective, or representative basis and will not assert class, collective, or representative action claims against the other in arbitration or otherwise.

*Id.* Under the terms of the Arbitration Agreement, Plaintiff agreed that "any question regarding class or collective arbitrability shall be decided by a court of law and not an arbitrator" *Id.* , and that "[e]ither party may bring an action in any court of competent jurisdiction to compel arbitration under this Agreement …." *Id.* at p. 1, p. 3.

4

## II. JURISDICTION

This Court has jurisdiction to entertain a motion to compel arbitration pursuant to the Federal Arbitration Act if this Court otherwise has jurisdiction over the underlying lawsuit but for the effective arbitration agreement. 9 U.S.C. § 4; *see also We Care hair Dev., Inc. v. Engen*, 180 F.3d 838, 841 (7th Cir. 1999) (citing *Moses v. H. Cone Memorial Hosp.*, 460 U.S. 1, 25, n. 32 (1983)). As set forth more fully in Signature's Notice of Removal, this Court has subject matter jurisdiction over the underlying lawsuit under the Class Action Fairness Act. Moreover, the Arbitration Agreement explicitly provides that the Court shall resolve any disputes with respect to it. Arbitration Agreement at p. 1, p.3, Ex 4.

## III. LEGAL STANDARD

A motion to dismiss based on a contractual arbitration clause is properly addressed under Rule 12(b)(3). *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 808 (7th Cir. 2011); *Auto. Mechs. Local 701 Welfare & Pension Funds v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 746 (7th Cir. 2007); *Miller v. Southwest Airlines Co.*, 2018 WL 4030590, at *6 (N.D. Ill. Aug. 23, 2018) (granting motion to dismiss for improper venue because BIPA claims were preempted by federal labor law and CBA that contained arbitration clause). In determining whether venue is proper, this Court "is not obligated to limit its consideration to the pleadings nor to convert the motion to one for summary judgment." *Cont'l Cas. Co. v. Am. Nat. Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005).

It is well established that the Federal Arbitration Act establishes a "'liberal federal policy favoring arbitration agreements.'" *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018). Absent a clear statutory exemption to the arbitrability of a plaintiff's claim, courts must "respect and enforce agreements to arbitrate." *Id.* ; *KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011) ("The Act

5

reflects an 'emphatic federal policy in favor of arbitral dispute resolution.'") (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985)); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345 (2001) ("[O]ur cases place it beyond dispute that the FAA was designed to promote arbitration."); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006) ("[The Act] embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts."). The preference for honoring arbitration agreements requires courts to "rigorously enforce" valid arbitration agreements. *Epic Sys. Corp.*, 138 S. Ct. at 1621; *see also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991).

Where an arbitration agreement exists, "the standard for compelling arbitration is low," *Mark v. Portfolio Recovery Assoc., LLC*, 2015 WL 1910527, at *2 (N.D. Ill. Apr. 27, 2015), such that any doubts concerning the arbitrability of a claim must be resolved in favor of arbitration. *Moses H Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). A party seeking to compel arbitration need only show an agreement to arbitrate, a dispute within the scope of the arbitration agreement, and the opposing party's refusal to arbitrate. *Mark*, 2015 WL 1910527 at *2. It is proper to enforce a contractual arbitration clause through a Rule 12(b)(3) motion to dismiss for improper venue. *Faulkenberg*, 637 F.3d at 807.

### IV.  ARGUMENT

**A.  Signature and Plaintiff's Arbitration Agreement is a Binding and Enforceable Contract and Plaintiff Should Be Compelled to Abide by Its Terms.**

This Court should grant Signature's motion to dismiss and compel arbitration because Plaintiff and Signature executed a binding and enforceable Arbitration Agreement that covers the claims made in his Complaint. A valid contract to arbitrate is sufficient to mandate arbitration of claims. *Tortoriello v. Gerald Nissan of N. Aurora, Inc.*, 379 Ill.App.3d 214, 216 (2008). Like any

6

valid contract, a legitimate agreement to arbitrate requires an offer, an acceptance, and consideration. *Equistar Chems., LP v. Hartford Steam Boiler Inspection & Ins. Co.*, 379 Ill.App.3d 771, 773 (2008). Consideration is defined as some right, interest, profit, or benefit accruing to one party, or some forbearance, disadvantage, detriment, loss or responsibility given, suffered, or undertaken by the other. *De Fontaine v. Passalino*, 222 Ill.App.3d 1018 (2d Dist. 1991). The parties to a contract need not have identical rights and obligations. *Tortoriello*, 379 Ill.App.3d at 216.

The essential component of consideration is bargained for exchanged of promises or performances, and any act or promise that is a benefit to one party or a disadvantage to the other is sufficient consideration to support a contract. *Garber v. Harris Tr. & Sav. Bank*, 104 Ill.App.3d 675 (1st Dist. 1982); *De Fontaine*, 222 Ill.App.3d 1018. As a matter of law, a mutual promise to arbitrate alone is sufficient consideration to support an agreement to arbitrate. *Bishop v. We Care Hair Dev. Corp.*, 316 Ill.App.3d 1182, 1185 (1st Dist. 2000); *see also OTO, LLC v. Kho*, 8 Cal. 5th 111, 155 (2019) ("In this case, [the plaintiff's] promise to arbitrate its disputes with [the defendant] and to forego its right to judicial determination of those disputes – including the right to a jury trial – provided consideration for the agreement, as did [the defendant's] similar promise.") (internal quotations and alterations omitted)).

Here, there was a valid agreement to arbitrate supported by consideration, as there was a mutual agreement to arbitrate claims. *See* Arbitration Agreement at p. 1 ("Company and [Plaintiff] voluntarily agree to the resolution by arbitration of all claims, disputes, and or controversies … that the Company may have against Employee or that Employ may have against Company …"). Specifically, the Arbitration Agreement is styled as a "Mutual Agreement to Arbitrate." *Id.* Further, the Arbitration Agreement was <u>not</u> a condition of Plaintiff's employment with Chicago

7

Lakeshore, as the Arbitration Agreement, on its face, states that said agreement is voluntary. *Id.* Upon his review of the Agreement's terms, Plaintiff elected to agree to the terms, and executed the Agreement accordingly. *Id.*

This is the exact mutual exchange of promises that is sufficient to find a valid agreement to arbitration. *See Bishop*, 316 Ill.App.3d at 1198 ("[A] mutual promise to arbitrate is sufficient consideration to support an agreement to arbitrate."); *OTO, LLC*, 8 Cal. 5th at 155 (holding that a mutual agreement to arbitrate was sufficient consideration). Moreover, employment with Chicago Lakeshore is additional consideration. Accordingly, the Arbitration Agreement is supported by valuable and valid consideration, and is therefore enforceable.

    **B.    Plaintiff's Claims Made in the Complaint Are Arbitrable Because They Arise Out Of His Employment With Chicago Lakeshore, And BIPA Is A "Statutory Claim" Covered By The Agreement**

"[W]hether a claim falls within the scope of an arbitration agreement turns on the factual allegations in the complaint." *I-Link Inc. v. Red Cube Int'l AG*, 2001 U.S. Dist. LEXIS 1606. The claims asserted in this action, all arising out of Plaintiff's employment, are clearly covered by the Arbitration Agreement. As described in the Agreement, Plaintiff and Chicago Lakeshore agreed to arbitrate any claim "whether or not arising out of [Plaintiff's] employment or its termination] …." Plaintiff alleges that "[Signature] was using [a] biometric fingerprint timeclock system when [Plaintiff] began his employment with [Signature] in November 2019," Compl. at ¶ 30, and that Plaintiff was required to use the fingerprinting timeclock while clocking in "in order to continue his employment with [Signature]." *Id.* at ¶ 30. This is Plaintiff's operative factual allegation from which both of his causes of action under BIPA flow—that but for Signature's requirement that he clock in and out of work using a biometric timeclock (without first obtaining his consent), Plaintiff's rights under BIPA would not have been violated. The Arbitration Agreement explicitly

8

provides that claims arising under an alleged statutory violations, such as the causes of action under Illinois's BIPA statute filed by the Plaintiff, are to be resolved via arbitration. Arbitration Agreement, p. 1, Ex. 4 ("The claims covered by this Arbitration Agreement include … claims for violation of any federal, state, or other governmental law, statute regulation or ordinance ….").

This exemplifies the type of arbitrable claim contemplated under the Arbitration Agreement that Plaintiff executed, and thus the Court should compel Plaintiff to arbitrate his BIPA claims as made in the Complaint. *See Miracle-Pond v. Shutterfly, Inc.*, No. 19-CV-4722, 2020 U.S. Dist. LEXIS 86083, at *20 (N.D. Ill. May 15, 2020) (granting motion to compel arbitration of claims arising under BIPA where the plaintiff "entered into a valid arbitration agreement"). Accordingly, Plaintiff has asserted an arbitrable claim, and this Court should compel Plaintiff to arbitrate his individual claims made in his Complaint.

    **C.**    **Plaintiff Violated the Terms of the Arbitration Agreement by Filing Suit in Court, and The Terms of the Agreement Provide that this Court May Interpret and Enforce the Terms.**

Here, the Arbitration Agreement provides that the "Company and [Plaintiff] voluntarily agree to the resolution by arbitration of all claims, disputes, and or controversies … that the Company may have against Employee or that Employ may have against Company …" Arbitration Agreement at p. 1, Ex. 4. Further, with respect to Class and Representative Actions,

> [Plaintiff] and Company expressly intend and agree that each will also forego pursuing any covered dispute on a class, collective, or representative basis and will not assert class, collective or representative claims against the other in arbitration or otherwise … [Plaintiff] and Company shall submit their own, individual claim in arbitration, and shall be entitled to seek dismissal of such class, collective, or representative claims and otherwise assert this Agreement as a defense in any proceeding.

*Id.* Further, the Arbitration Agreement provides that "either party may bring an action in any court of competent jurisdiction to compel arbitration under this Agreement" and that "[Plaintiff] and

Company shall be entitled to seek dismissal of any such class, collective, or representative claims and otherwise assert this Agreement as a defense in any proceeding." *Id.* at p. 1, p. 5. Plaintiff thus violated the terms of the Arbitration Agreement when he filed his Complaint in state court on April 29, 2020, and this Court has authority under the terms of the Agreement to enforce it. Signature thus requests that the Court exercise its authority to enforce the terms of Plaintiff and Chicago Lakeshore's Arbitration Agreement in accordance with the clear policy of the FAA favoring arbitration, dismiss Plaintiff's Complaint with prejudice, and compel him to proceed with arbitration for the claims made in the underlying lawsuit. The Court also should declare, pursuant to the agreement of the parties, that Plaintiff cannot proceed with a class, collective or representative action in any forum.

## V. CONCLUSION

The parties entered into a mutually binding, enforceable Arbitration Agreement that covers the BIPA claims alleged Plaintiff's Class Action Complaint, all of which arose from Plaintiff's employment. Plaintiff violated the clear terms of this Agreement by filing a lawsuit. Based on applicable law and the clear terms of the Arbitration Agreement, this Court has authority to enforce the terms of the Arbitration Agreement and should do so by dismissing Plaintiff's Complaint in its entirety with prejudice, or, in the alternative, compel Plaintiff to proceed to arbitration, declare, that Plaintiff cannot proceed with a class, collective or representative action in any forum and grant such other relief as is just and proper.

Dated: August 29, 2020              Respectfully submitted,

                                     _____
                                     Mary A. Smigielski
                                     Michael J. Roman

                LEWIS BRISBOIS BISGAARD & SMITH LLP
                550 W. Adams St., Ste. 500
                Chicago, Illinois 60661
                mary.smigielski@lewisbrisbois.com
                michael.roman@lewisbrisbois.com
                Phone: (312) 345-1718

                *Counsel for Defendant Signature Healthcare Services, LLC*

**Certificate of Service**

The undersigned attorney certifies that on August 28, 2020, he caused to be served the foregoing document with the Clerk of the Court for the Northern District of Illinois using the Court's CM/ECF, and that he served true and correct copies of the filed document by email to counsel listed below.

Marc E. McCallister
Gary D. McCallister
MCCALLISTER LAW GROUP, LLC
200 N. LaSalle Street, Suite 2150
Chicago, IL 60601
P: (312) 233-1560
mem@mccallisterlawgroup.com
gdm@mccallisterlawgroup.com

Steven L. Woodrow
WOODWROW & PELUSO, LLC
3900 E. Mexico Avenue, Suite 300
Denver, Colorado 80210
P: (720) 213-0675
swoodrow@woodrowpeluso.com

                                                */s/ Michael J. Roman*