# Exhibit 3

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JASON D. PETTY,<br><br>    Plaintiff,<br><br>v.<br><br>SIGNATURE HEALTHCARE SERVICES, LLC d/b/a AURORA-CHICAGO LAKESHORE HOSPITAL, a Michigan limited liability company,<br><br>    Defendant. | Case No. 20-cv-5075 |

## **DECLARATION OF PATRICIA McCLURE-CHESSIER**

I, Patricia McClure-Chessier, do declare as follows.

1. I am over the age of 18 and have personal knowledge of the matters set forth in this declaration. If called as a witness, I could and would competently testify to the matters set forth herein.

2. I am an employee of Defendant Signature Healthcare and the Chief Executive Officer ("CEO") of Aurora-Chicago Lakeshore Hospital ("Chicago Lakeshore"), an affiliate of Signature Healthcare Services, LLC ("Signature Healthcare"). I have been CEO of Chicago Lakeshore since March 4, 2019. In my capacity as CEO, I have personal knowledge and understanding of Signature Healthcare's business operations at a corporate level, including the structure of the Signature Healthcare and Chicago Lakeshore organizations, human resources functions, personnel matters, the maintenance of business books and records, and active litigation matters.

1

3. Signature Healthcare Services, LLC is a Michigan limited liability company with one member. The sole member of Signature Healthcare is an individual who is a resident and citizen of Michigan. Signature Healthcare owns and operates 14 hospitals throughout the country, including Chicago Lakeshore.

4. Signature Healthcare maintains two corporate offices. One office is located in Corona, California where Signature Healthcare's Chief Executive Officer, Chief Financial Officer, Chief Accounting Officer, Executive Vice President, and Corporate Vice President of Clinical Services are based. The other office is located in Troy, Michigan where its Legal Department, Accounting Department, and Human Resources Departments are based. Signature Healthcare manages its day-to-day operations and makes all corporate decisions at or between these two offices.

5. I familiar with the claims alleged by former employee Jason D. Petty in the lawsuit captioned *Jason D. Petty v. Signature Healthcare Services, LLC d/b/a Aurora-Chicago Lakeshore Hospital* that was filed in the Circuit Court of Cook County, Illinois on April 29, 2020. Signature Healthcare was served with a copy of the lawsuit on July 30, 2020.

6. As part of the onboarding process, all Chicago Lakeshore employees complete certain employment-related paperwork prior to their respective start dates. Chicago Lakeshore refers to this onboarding paperwork as the "Hire Packet." The Hire Packet includes Chicago Lakeshore's employee handbook, policies and procedures, training assessments, certification forms, forms related to payroll (*e.g.*, direct deposit forms) and a Mutual Arbitration and Class Action Waiver Agreement ("Mutual Arbitration Agreement").

7. I have reviewed Jason D. Petty's Hire Packet, personnel file and other employment records as those documents are maintained by Chicago Lakeshore in the ordinary course of its business. Mr. Petty was employed by Chicago Lakeshore as a Mental Health Worker in its Nursing

department from November 4, 2019 to January 30, 2020. Mr. Petty applied for the position on October 1, 2019 and was offered the position on October 15, 2019 with a November 4, 2019 start date.

8. Mr. Petty filled out his Hire Packet on October 31, 2019 and executed the Mutual Arbitration Agreement to Arbitrate on that date. A true and correct copy of Mr. Petty's executed Mutual Arbitration Agreement is attached hereto as Exhibit A.

9. Mr. Petty's Mutual Arbitration Agreement provides, among other things, that:

> Chicago Lakeshore Hospital and all of its parents, subsidiaries, and related entities or corporations (collectively, the "Company") and Employee voluntarily agree to the resolution by arbitration of all claims, disputes, and/or controversies (collectively, claims), whether or not arising out of the Employee's employment or its termination, that Company may have against Employee or that Employee may have against Company, its subsidiaries or affiliated entities, or against its current or former employees or agents in their capacity.

The claims covered by the Mutual Agreement to Arbitrate include "claims for violation of any federal, state, or other governmental law, statute, regulation or ordinance except claims [for unemployment or workers compensation benefits] …." Ex. A at ¶ 1.

9. Mr. Petty's Mutual Arbitration Agreement also includes a class action waiver provision, specifically that:

> Employee and Company expressly intend and agree that each will also forego pursuing any covered dispute on a class, collective, or representative basis and will not assert class, collective, or representative action claims against the other in arbitration or otherwise.

Ex. A at ¶ 2. The Mutual Agreement to Arbitrate further provides that "any question regarding class or collective arbitrability shall be decided by a court of law and a not an arbitrator," *id.*, and that

3

"[e]ither party may bring an action in any court of competent jurisdiction to compel arbitration under this Agreement …." Ex. A at ¶ 9.

10. As part of Mr. Petty's onboarding, he also executed an "Informed Written Consent for the Collection, Storage, and Use of Fingertip Templates" ("BIPA Consent") on November 5, 2019. A true and correct copy of Mr. Petty's executed BIPA Consent is attached hereto as Exhibit B. The BIPA Consent is maintained in Mr. Petty's employee file in the ordinary course of business, which I have reviewed.

11. During the time that Mr. Petty worked at Chicago Lakeshore, Signature Health employed over 500 employees that clocked in and out of work using the timeclocks that Mr. Petty used and which he alleges are covered under the Illinois Biometric Information Privacy Act.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and corrected.

Executed this 28th day of August, 2020 in Boston, MA.

　　　　/s/ Patricia McClure-Chessier
　　　　Patricia McClure-Chessier

# Exhibit A

## MUTUAL AGREEMENT TO ARBITRATE

1. **Voluntary Mutual Agreement to Arbitrate Claims.** Chicago Lakeshore Hospital and all of its parents, subsidiaries, and related entities or corporations (collectively, the "Company") and Employee voluntarily agree to the resolution by arbitration of all claims, disputes, and/or controversies (collectively "claims"), whether or not arising out of Employee's employment or its termination, that Company may have against Employee or that Employee may have against Company, its subsidiaries or affiliated entities, or against its current or former employees or agents in their capacity. The claims covered by this Arbitration Agreement include, but are not limited to, claims for wages or other compensation due; claims for breach of any contract or covenant (express or implied); tort claims; claims for discrimination or harassment, including, but not limited to, any federal or state civil rights laws, ordinances, regulations or orders, based on charges of discrimination or harassment on account of race, color, religion, sex, sexual orientation, age, citizenship, national origin, mental or physical disability, medical condition, genetic predisposition, marital status, pregnancy or any other discrimination prohibited by such laws, ordinances, regulations or orders; claims for benefits (except where an employee benefit or retirement plan specifies that its claims procedures shall culminate in an arbitration procedure different from this), and claims for violation of any federal, state, or other governmental law, statute, regulation or ordinance, except claims excluded below..

2. **Class and Representative Action Waiver.** Except as otherwise required under applicable law, Employee and Company expressly intend and agree that each will also forego pursuing any covered dispute on a class, collective, or representative basis and will not assert class, collective, or representative action claims against the other in arbitration or otherwise. Nor will class or collective action procedures apply pursuant to this Agreement. Employee and Company shall only submit their own, individual claims in arbitration, and shall be entitled to seek dismissal of any such class, collective, or representative claims and otherwise assert this Agreement as a defense in any proceeding. This waiver does not apply to any class, collective, or representative claims that cannot be waived as a matter of law. The Company and Employee further agree that any question regarding class or collective arbitrability shall be decided by a court of law and not an arbitrator.

3. **Claims Not Covered by the Agreement.** Claims that Employee may have for workers' compensation or for unemployment compensation benefits, or that Company or Employee may have for injunctive relief are not covered by this Agreement. If either Company or Employee have more than one claim against the other, one or more of which is not covered by this Agreement, such claims shall be determined separately in the appropriate forum for resolution of those claims. Nothing in this Agreement shall preclude the parties from agreeing to resolve claims not covered by this Agreement pursuant to the provisions of this Agreement.

This Agreement does not cover and is inapplicable to claims which have been filed as civil lawsuits in any court prior to the execution of this Agreement.

4. **Required Notice of Claims.** All statutory claims for or related to employment discrimination or harassment must be filed with the federal Equal Employment Opportunity Commission and/or the Illinois Human Rights Commission, or the state civil rights agency that is located in Employee's state of employment, within the time limits set forth by applicable state and federal law, prior to being submitted to arbitration, or such claims are waived.

If Employee or Company does not make a written request for arbitration within the limitations period applicable to a claim under applicable federal or state law, the party has waived its right to raise that claim, in any forum, arising out of that issue or dispute.

Written notice of a claim against Company, its subsidiaries, affiliated entities, officers, directors, employees or agents shall be sent to the then-current Company agent located at Chicago Lakeshore Hospital, 4840 N. Marine Drive, Chicago, IL 773-878-9700. Written notice of a claim against Employee shall be sent to Employee.

5. **Arbitration Procedure.** Company and Employee agree that, except as provided in this Agreement, any arbitration shall be in accordance with the Federal Arbitration Act (FAA), 9 U.S.C. § 1, *et seq.*, in conformity with the procedures of the JAMS Employment Arbitration Rules and Procedures, unless otherwise stated in this Agreement. The JAMS Employment Arbitration Rules and Procedures can be found at https://www.jamsadr.com/rules-employment-arbitration/ or a copy may be requested from the Company.

Employee shall initiate the arbitration process by the delivery of a demand for arbitration on the then-current Company representative located at Chicago Lakeshore Hospital, 4840 N. Marine Drive, Chicago, IL 773-878-9700, via certified mail return receipt and within the time limits which would apply to the filing of a civil complaint in court. Company shall initiate the arbitration process by the delivery of a demand for arbitration on Employee via certified mail return receipt and within the time limits which would apply to the filing of a civil complaint in court. A late request will be void.

6. **Selection of Arbitrator.** The Arbitrator shall be selected as follows: The parties shall first attempt to select a neutral arbitrator by mutual agreement. If the parties are unable to come to an agreement, the arbitrator shall be appointed consistent with the process set forth in the JAMS Employment Arbitration Rules and Procedures, Rule 15. If the Parties do not agree on an Arbitrator, JAMS shall send the Parties a list of at least five (5) Arbitrator candidates in the case of a sole Arbitrator and ten (10) Arbitrator candidates in the case of a tripartite panel. JAMS shall also provide each Party with a brief description of the background and experience of each Arbitrator candidate. JAMS

may replace any or all names on the list of Arbitrator candidates for reasonable cause at any time before the Parties have submitted their choice pursuant to the paragraph below.

Within seven (7) calendar days of service by the Parties of the list of names, each Party may strike two (2) names in the case of a sole Arbitrator and three (3) names in the case of a tripartite panel, and shall rank the remaining Arbitrator candidates in order of preference. The remaining Arbitrator candidate with the highest composite ranking shall be appointed the Arbitrator. JAMS may grant a reasonable extension of the time to strike and rank the Arbitrator candidates to any Party without the consent of the other Parties.

If this process does not yield an Arbitrator or a complete panel, JAMS shall designate the sole Arbitrator or as many members of the tripartite panel as are necessary to complete the panel.

If a Party fails to respond to a list of Arbitrator candidates within seven (7) calendar days after its service, or fails to respond according to the instructions provided by JAMS, JAMS shall deem that Party to have accepted all of the Arbitrator candidates.

7. **Governing Law.** The Arbitrator shall apply the substantive law (and the law of remedies, if applicable) of Illinois, or federal law, or both, as applicable to the claim(s) asserted. The Arbitrator shall have the authority to award all remedies and relief that would otherwise have been available if the claim had been brought by way of a civil complaint in court. **The arbitration shall be final and binding upon the parties.**

The Arbitrator should utilize the Federal Rules of Evidence as a guide to the admissibility of evidence. The parties retain the right to conduct a reasonable amount of discovery guided by the Federal Rules of Civil Procedure, and the Arbitrator shall have the power to decide any discovery disputes between the parties.

Either party, upon request at the close of hearing, shall be given leave to file a post-hearing brief. The time for filing such a brief shall be set by the Arbitrator.

8. **Location of Arbitration.** The parties agree that any arbitration shall take place in the State of Illinois in the county in which Employee works or worked for Company, unless such venue is inconvenient to the majority of witnesses expected to be necessary to the case or unless the parties agree to some other locale.

9. **Arbitration Award.** Within ninety (90) days following the hearing and the submission of the matter to the Arbitrator, the Arbitrator shall issue a written opinion and award which shall be signed and dated. The Arbitrator's award shall include factual findings and the reasons upon which the award is based.

Either party may bring an action in any court of competent jurisdiction to compel arbitration under this Agreement and to enforce an arbitration award.

10. **Arbitration Fees and Costs.** The cost of the Arbitrator and other incidental costs of arbitration shall be borne by Company. The parties shall each bear their own costs for legal representation in any arbitration proceeding, provided, however, that the Arbitrator shall have the authority to require either party to pay the fee for the other party's representation during the arbitration, as is otherwise permitted under federal or state law, as part of any remedy that may be ordered.

11. **Requirements for Modification or Revocation.** The Agreement to arbitrate shall survive the termination of Employee's employment. It can only be revoked or modified by a writing signed by the parties that specifically states an intent to revoke or modify this Arbitration Agreement.

12. **Sole and Entire Agreement.** This is the complete Agreement of the parties on the subject of arbitration of disputes, except for any arbitration agreement in connection with any retirement or benefit plan. This Arbitration Agreement supersedes any prior or contemporaneous oral or written understanding on the subject. No party is relying on any representations, oral or written, on the subject of the effect, enforceability or meaning of this Arbitration Agreement, except as specifically set forth in this Arbitration Agreement.

13. **Construction.** If any provision of this Agreement is adjudged to be void or otherwise unenforceable, in whole or in part, such adjudication shall not affect the validity of the remainder of the Agreement.

14. **Not an Employment Agreement.** This Arbitration Agreement is not, and shall not be construed to create, any contract of employment, express or implied. Nor does this Agreement in any way alter the "at-will" status of Employee's employment.

15. **Voluntary Agreement.** Employee acknowledge that Employee have carefully read this Arbitration Agreement, that Employee understand its terms, that all understandings and agreements between Company and Employee relating to the subjects covered in the Agreement are contained in it, and that Employee have entered into the Agreement voluntarily and not in reliance on any promises or representations by Company other than those contained in this Agreement.

EMPLOYEE UNDERSTAND THAT BY SIGNING THIS AGREEMENT, COMPANY AND EMPLOYEE HAVE BOTH WAIVED THEIR RIGHT TO A JURY TRIAL AND THEIR RIGHT TO APPEAL WITH RESPECT TO ALL CLAIMS COVERED BY THIS AGREEMENT.

Employee initials: *[signature]*

EMPLOYEE FURTHER ACKNOWLEDGES THAT EMPLOYEE HAS BEEN GIVEN THE OPPORTUNITY TO DISCUSS THIS AGREEMENT WITH EMPLOYEE'S PRIVATE LEGAL COUNSEL AND HAS AVAILED HIMSELF OR HERSELF OF THAT OPPORTUNITY TO THE EXTENT EMPLOYEE WISHES TO DO SO.

Employee:

_[signature]_
Signature of Employee

JASON PETTY
Print Name of Employee

10/31/19
Date

Company:

_[signature] J. Holt_
Signature of Authorized Company Representative

H.R. Coordinator
Title of Representative

11.4.19
Date

# Exhibit B



## Informed Written Consent for the Collection, Storage, and Use of Fingertip Templates

Aurora Chicago Lakeshore Hospital, LLC ("ACLH") utilizes Kronos InTouch with Touch ID at its facility. As part of the Touch ID enrollment process, an algorithm creates a template using a scan of employees' fingertips (hereinafter "template(s)"). At no point are employees' actual fingertip scans stored. The templates derived from the fingertip scans are stored in a secure database and used to verify employees' identities upon arrival at the facility.

Prior to participating in the Touch ID enrollment process, please take notice of the following:

1. It is possible that the scan of your fingertips, and the templates derived therefrom, may be interpreted as constituting data regulated under the Illinois Biometric Information Privacy Act;

2. Your employment at ACLH will involve the collection of your fingertip scans and storage of the templates derived therefrom;

3. The templates derived from your fingertip scans will be collected, stored, and used for the duration of your employment, but in no event longer than 3 years after your last interaction with ACLH; and

4. The templates derived from your fingertip scans will be collected, stored, and used for the specific purpose of verifying your identity.

---

Having read the above, I agree to the following:

1. My fingertip scans and the templates derived therefrom may be collected, used, and stored for the duration of my employment, but in no event longer than 3 years after my last interaction with ACLH;

2. My fingertip scans and the templates derived therefrom will be collected, used, and stored for the specific purpose of verifying my identity; and

3. By signing this document, I am providing ACLH with a legally effective written release (i.e., informed written consent) to collect, store, and use my fingertip scans and the templates derived therefrom.

_____       11/5/19
EMPLOYEE'S SIGNATURE                  DATE

Jason Perry
_____
EMPLOYEE'S NAME (Please Print)

4814-5769-1482.1